```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - -- - - - - - - - - - - - - - x
                                      :
UNITED STATES OF AMERICA              :
                                      :
        - v. -                        :    10 Cr. 399 (LTS)
                                      :
THOMAS HARDIN,                        :
                                      :
                Defendant.            :
                                      :
- - - - - - - - - - - - - - -- - - - x
```

GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney for the
Southern District of New York

Parvin Moyne
Assistant United States Attorney

   - Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York  10007*

February 24, 2015

BY HAND DELIVERY

Hon. Laura Taylor Swain
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York  10007

    Re:  United States v. Thomas Hardin,
         10 Cr. 399 (LWS)

Dear Judge Swain:

    The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the substantial assistance that defendant Thomas Hardin has rendered in the investigation and prosecution of other persons.  In light of these facts, the Government moves, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines"), that the Court sentence the defendant in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

    On December 21, 2009, Hardin pleaded guilty to Counts One and Two of the above-captioned Information.  Count One of the Information charges the defendant with conspiring with others to commit securities fraud, in violation of Title 18, United States Code, Section 371, in connection with a scheme to defraud by executing securities trades based on material nonpublic information.  This charge carries a maximum sentence of five years' imprisonment, a maximum term of three years' supervised release, a maximum fine, pursuant to Title 18, United States Code § 3571, of the greatest of $250,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to a person other than the defendant as a result of the offense, and a mandatory $100 special assessment.

1

Count Two of the Information charges the defendant with securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-2, and Title 18, United States Code, Section Two, in connection with a scheme to defraud by causing the short sale of Google securities based on material nonpublic information. This charge carries a maximum sentence of 20 years' imprisonment, a maximum term of three years' supervised release, a maximum fine of $5 million, and a mandatory $100 special assessment.

I.  Hardin's Background and Criminal Conduct

Hardin is a former investment analyst and trader. After graduating from college in 1999, Hardin worked for several different investment firms and on his own as a financial analyst and trader. Most recently, from May 2006 through February 2009, Hardin worked as a Managing Director at Lanexa Global Management (Lanexa), which maintained an office in Manhattan.

During the time that Hardin worked at Lanexa, he received, disseminated, and traded on material, nonpublic information from two sources: Roomy Khan and Gautham Shankar.

A.  The Khan Tips

In approximately 2001, Hardin met Roomy Khan at a conference and the two became professional friends. They shared an interest in technology stocks and over the years, they spoke regularly about various public companies that both followed. In approximately 2006, the nature of the information Khan shared with Hardin changed and Khan began telling Hardin information about public companies that Hardin knew was material nonpublic information ("Inside Information").

In particular, in 2006 and 2007, Khan shared with Hardin Inside Information regarding: (1) the acquisition of Adesa, Inc. (Adesa); (2) the acquisition of Catalina Marketing Group (Catalina); (3) the acquisition of Kronos, Inc. (Kronos); (4) the acquisition of Hilton Hotels Corp. (Hilton); and (5) the quarterly earnings of Google for the second quarter of 2007. Hardin knew from his conversations with Khan that her sources were not authorized to disclose this highly confidential information; in particular, he knew that Khan obtained the Google Inside Information from a woman who worked at an outside investor relations firm for Google (Shammara Hussain), and that Khan

2

obtained the Adesa, Catalina, Kronos and Hilton information, from Deep Shah, an analyst at the rating company Moody's.

Hardin thereafter executed securities transactions on behalf of Lanexa in Adesa, Kronos, Hilton and Google based on the Inside Information, and in advance of public announcements relating to the acquisitions of Adesa, Kronos and Hilton, and Google's 2007 second quarter earnings. Lanexa earned profits and/or avoided losses of approximately $1,110,000 as a result of these trades.

Hardin also shared the Inside Information he obtained from Roomy Khan with a couple of other individuals, including Gautham Shankar, who was a proprietary trader at the Schottenfeld Group LLC ("Schottenfeld"). Shankar shared this information with other traders at Schottenfeld, namely, Zvi Goffer and David Plate. Goffer and Plate used this information to make trades in Kronos and Hilton based on the material nonpublic information, profiting by approximately $236,000.

During the time that Khan was sharing Inside Information with Hardin, Khan told Hardin that her sources of information regarding Kronos, Hilton and Google wanted to be paid for the information they provided. On several occasions Hardin collected a total of approximately $30,000 from Shankar and Goffer, which Hardin delivered to Khan and her source.

B.   The Shankar Tip

In approximately late August 2007, Hardin obtained material, nonpublic information from Gautham Shankar regarding the acquisition of 3Com Corporation (3Com), by Bain Capital Partners, LLC. Shankar had obtained this information from Zvi Goffer, who in turn learned it indirectly from two attorneys who were working on the acquisition and who misappropriated the information from their law firm. After 3Com announced on September 28, 2007, that it was being acquired by Bain Capital Partners at a premium over the prior day's closing price, Lanexa realized unlawful profits of approximately $598,000.

3

C.  Miscellaneous

In addition to the above-described information, Hardin received information from others, including Wesley Wang, that Hardin understood to be Inside Information but did not trade on.

## II.  The Nature of Hardin's Cooperation

On or about July 9, 2008, FBI agents contacted Hardin. At that initial encounter with FBI agents, Hardin readily admitted wrongdoing, accepted responsibility for his criminal conduct, and expressed a desire to cooperate. Hardin thereafter met with, and spoke to, law enforcement officers on a number of occasions in subsequent weeks. Hardin confessed to receiving material nonpublic information from Khan and Shankar, trading securities based upon this information, and tipping this information to others. He did all of this without legal representation. Indeed, Hardin did not obtain legal representation until more than a year later, when it was time for him to sign a cooperation agreement and enter a plea of guilty.

During his cooperation, Hardin provided law enforcement officers with many details surrounding his criminal conduct, including: the nature and timing of specific Inside Information Hardin received from Khan, Shankar and Wang; the identities of Khan's, Shankar's and Wang's sources of Inside Information; the identities of other individuals whom Khan tipped Inside Information, including Raj Rajaratnam, individuals at Trivium (a hedge fund for which Khan consulted), Sunil Bhalla (an executive at Polycom), and Doug Whitman, a hedge fund manager; the identities of individuals whom Hardin tipped with the Inside Information he had received from Khan and Shankar, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇; Hardin's ▇▇▇▇▇▇▇▇ decision to trade securities on behalf of ▇▇▇▇ based on the Inside Information from Khan and Shankar; and Hardin's efforts to collect money from his tippees in order to pay Khan's sources of Inside Information.

In addition, and significantly, Hardin also described the change in his relationship with Roomy Khan in early 2008. Around that time, Khan – who had not provided Hardin with Inside Information since the Google tip in July 2007 – told Hardin that she did not want to speak with him over the telephone any more. Khan and Hardin then met in person in New York on several occasions during the winter and spring of 2008. During one of these meetings, Khan told Hardin that

4

the SEC had contacted her and was investigating certain trades placed by Trivium.  Khan and Hardin also spoke about various cover stories that could explain certain trades that were, in fact, insider trades, and Hardin assisted Khan in coming up with a plausible legal explanation for these trades.  Hardin also disclosed how on one occasion, Khan called him from a telephone she explained belonged to her gardener, and she asked Hardin for another telephone number on which she could contact Hardin so that they could speak discreetly.  Khan also told Hardin that she was protecting him and did not want to get him in trouble.  Hardin disclosed all of this information to law enforcement officers after he began cooperating in the Summer of 2008.

Hardin also agreed to cooperate proactively in the Government's covert insider trading investigation.  Specifically, Hardin engaged in dozens of consensually recorded calls and meetings at the direction of the FBI, with more than five subjects of the Government's investigation, many of whom Hardin had initially identified for the Government.  Among others, Hardin engaged in recorded calls with ▓▓▓ Wang, and Khan, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.  In doing so Hardin placed himself at risk.



Hardin also supplied the Government with emails, instant messages, and other documents he possessed reflecting communications and/or conduct related to insider trading.

5

### III. Hardin Substantially Assisted the Government's Investigations

Hardin has substantially assisted in the Government's investigation and prosecution of insider trading crimes in a number of respects.

Hardin spoke to the Government on many occasions and provided detailed information about a number of individuals with whom he was involved in insider trading activities. This included, among others, Khan, Shankar, ▓▓▓▓ and Wes Wang. As to a number of these individuals, Hardin thereafter obtained incriminating recorded statements. The Government used Hardin's information and the recordings, among other evidence, to obtain court authorization to intercept wire communications over cellular telephones used by Wes Wang (the "Wang Wiretap"). The Wang Wiretap, in turn, produced incriminating evidence against Wang, Doug Whitman, and others. The Government later approached Wang, who agreed to cooperate with the Government. Wang's cooperation included his testimony against hedge fund manager Doug Whitman, in United States v. Whitman, 12 Cr. 125 (JSR). The Government also introduced at Whitman's trial an incriminating call captured over the Wang Wiretap. Whitman was convicted following trial of securities fraud and conspiracy to commit securities fraud, and later sentenced to 24 months' imprisonment.

Wang's cooperation, in turn, contributed to the investigation and prosecution of other individuals, including Karl Motey, ▓▓▓▓, ▓▓▓▓, and Reema Shah.[1] Based in part on Wang's information regarding Motey's involvement in exchanging Inside Information, which was corroborated by a consensually recorded meeting Wang had with Motey, the FBI approached Motey in April 2009. After being approached, Motey immediately began cooperating. Over the next year and a half, Motey engaged in more than 400 consensually recorded

---

[1] Wang's information about ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, heavily contributed to the Government's application for, and court authorization to, intercept recorded conversations over ▓▓▓▓ telephone. Information derived from this wiretap, as well as information provided by Wang, led to a subsequent court-authorized wiretap over the telephone of Reema Shah, a former Portfolio Manager at J&W Seligman. Shah later became a cooperating witness for the Government and in turn contributed to additional prosecutions and investigations.

conversations and meetings at the Government's direction.  As a cooperator, Motey played a pivotal role in the Government's investigation of expert networking firms, in particular Primary Global Research ("PGR"), by engaging in literally hundreds of consensually recorded conversations with consultants and employees of PGR.  Motey's consensual calls were the cornerstone of the Government's application to secure Court-authorized wiretaps of PGR's conference lines, which in turn provided the Government with incriminating recordings of PGR's clients and other PGR consultants and employees, leading to additional convictions.  The wiretap recordings of PGR clients – analysts and portfolio managers at hedge funds and investment firms around the country – and additional evidence developed therefrom have led to numerous other significant insider trading prosecutions, including the prosecution and convictions of James Fleischman, Dan Devore, Mark Longoria, Bob Nguyen, Alnoor Ebrahim, Walter Shimoon, and Manosha Karunatilaka, among others.

Hardin's cooperation also alerted the Government to the ongoing criminal activities of Roomy Khan.  In particular, unbeknownst to Hardin, at the time he was approached by the FBI, Khan had already been approached by the FBI and was, by appearances, cooperating with law enforcement.  Yet Khan, at the same time she was proffering with the Government and conducting consensual calls, was also lying to federal authorities, withholding critical information her criminal activities and that of others, and was obstructing the federal criminal and civil investigations.  Hardin's truthful proffers alerted the Government to Khan's deception and enabled the Government to confront Khan and develop additional evidence of her wrongdoing.

Hardin's cooperation also contributed to the successful prosecution of Zvi Goffer and David Plate in United States v. Goffer, et al, 10 Cr. 56 (RJS).  As noted above, Hardin shared the Inside Information he received from Khan regarding Kronos and Hilton with Shankar, who in turn tipped Zvi Goffer and David Plate.  Goffer and Plate were prosecuted with various insider trading activities and Hardin's information, along with that of Shankar (also a cooperating witness) and others, contributed to these prosecutions.  Importantly, Hardin's information corroborated that of Shankar and, as to the tips from Khan, provided an additional layer of detail, as Hardin obtained the tips directly from Khan.

Hardin was also a potential witness in the criminal trial of former hedge fund owner and manager Doug Whitman, in United States

7

v. Whitman, 12 Cr. 125 (JSR).  Whitman was charged with, among other things, trading Google securities based on Google Inside Information he received from Khan, which Khan had obtained from Shammara Hussain. Like Whitman, Hardin received the Google tip from Khan and had traded based upon this information; thus, his testimony corroborated Khan. Hardin met with prosecutors in advance of Whitman's trial and the Government considered calling Hardin as a witness.  While the Government ultimately decided not to call Hardin to testify, this decision was based primarily on the strength of the Government's case without Hardin's testimony and the number of other cooperating witnesses who would be testifying at trial.

Finally, Hardin has assisted the Securities and Exchange Commission ("SEC") in its civil action against Joseph Mancuso, to whom Zvi Goffer tipped the Kronos and Hilton acquisition information Hardin initially obtained from Khan.  See SEC v. Mancuso, 13 Civ. 2555.  Mancuso settled with the SEC in October 2013 but, had he proceeded to trial, Hardin was prepared to testify if called upon to do so.

IV.  Conclusion

Based on the foregoing, the Government has determined that Hardin has provided substantial assistance to the Government in the investigation and prosecution of other persons who committed federal offenses.  Indeed, Hardin's cooperation was exceptional:  it led to successful and ongoing criminal investigations of multiple insider trading networks and their participants, and the quality of the information Hardin provided contributed in significant part to dozens of insider trading convictions in the Southern District of New York in the past five years.  Significantly, perhaps without Hardin's cooperation (which led to the development of other cooperating witnesses), the Government may have never uncovered the expert insider trading ring network that led to 20 convictions alone.

The successful prosecutions resulting from Hardin's cooperation have received widespread public attention, sending a strong message to the financial community and public at large that insider trading will both be detected and prosecuted successfully. As a result, the convictions resulting from Hardin's cooperation serve as strong deterrent for others who would otherwise be tempted to engage in similar conduct.

Accordingly, the Government respectfully requests, pursuant to

8

Sentencing Guidelines Section 5K1.1, that the Court sentence Hardin in light of the facts stated above and the factors set forth in Section 5K1.1(a)(1)-(5) of the Sentencing Guidelines.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: _____
Parvin Moyne
Assistant United States Attorney
Tel.: (212) 637-2510

cc:  Senior U.S. Probation Officer Michele Greer-Bambrick
     Larry H. Krantz, Esq.